[No. A078552. First Dist., Div. Two. May 21, 1998.]

ROBERT J. MERLET, Plaintiff and Appellant, v.
RALPH A. RIZZO et al., Defendants and Respondents.

## COUNSEL

Branson, Fitzgerald & Howard and Kristi L. Curtis for Plaintiff and Appellant.

Kathleen M. McKenna for Defendants and Respondents.

## OPINION

**LAMBDEN, J.**—Attorneys Ralph A. Rizzo (Rizzo) and Lawrence D. Miller (Miller) represented Harry Allen (Allen) in a tort action which resulted in a judgment for Allen against Claudette Merlet (Claudette). Rizzo and Miller later applied to the court to issue a writ of sale against a property owned by Claudette's husband, Robert J. Merlet (Robert).[1] Robert was successful in defeating this writ application, and he subsequently filed a complaint against Rizzo, Miller, and Allen (collectively, respondents) for malicious prosecution and abuse of process. The trial court sustained a demurrer without leave to amend against his complaint, and he appeals from the order dismissing his claims. We uphold the trial court's ruling.

### BACKGROUND

Allen obtained a default judgment against Claudette for approximately $260,000 in December 1991. Allen applied for and received an order for sale of Claudette's one-half interest in her home, but the money from the sale of the home was insufficient to satisfy the judgment. Thereafter the United States Bankruptcy Court granted Claudette a discharge in bankruptcy.

On November 6, 1995, Allen, through his attorneys Rizzo and Miller, moved the court for an order for issuance of a writ of sale against Robert's half interest in a property owned by Claudette and Robert. The court denied the motion and respondents moved for reconsideration. The court granted reconsideration, but denied the motion. Respondents appealed from the reconsideration order, and this division dismissed the appeal in an unpublished decision, *Allen* v. *Merlet* (Jan. 9, 1997) A076062.

---

[1] Robert asserts that he and Claudette have divorced. This information is not in the record, and is not germane to the issues raised by this appeal.

Robert filed a complaint for malicious prosecution against respondents on October 21, 1996. The court sustained a demurrer with leave to amend; Robert filed a first amended complaint which added a cause of action for abuse of process. Robert complained that respondents improperly: (1) applied for a court order for issuance of a writ of sale; (2) moved for reconsideration of the order denying the issuance of a writ of sale; and (3) appealed the denial of the motion for reconsideration.

Respondents demurred, and the court sustained the demurrer without leave to amend. Robert filed a timely notice of appeal.

## Discussion

### I. Standard of Review

The trial court sustained without leave to amend respondents' demurrer to the first amended complaint. When considering an appeal from a judgment of dismissal following the sustaining of a demurrer, we accept the facts pleaded as true. (*American Philatelic Soc.* v. *Claibourne* (1935) 3 Cal.2d 689, 699 [46 P.2d 135].) The trial court erred if the pleading states a cause of action under any possible legal theory; it abused its discretion if the face of the pleadings shows a reasonable probability the defects could be cured by a properly amended pleading. (*Service by Medallion, Inc.* v. *Clorox Co.* (1996) 44 Cal.App.4th 1807, 1812 [52 Cal.Rptr.2d 650]; *Gami* v. *Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 877 [22 Cal.Rptr.2d 819].) We conclude that the trial court neither erred nor abused its discretion.

### II. Malicious Prosecution

Robert contends that the trial court erred in ruling that the application for an order for a writ of sale cannot support a later claim for malicious prosecution.

Originally the common law tort of malicious prosecution was limited to criminal cases, but the tort was extended to afford a remedy for the malicious prosecution of a civil action. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) "Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [plaintiff's favor]; (2) was brought without probable cause . . . ; and (3) was initiated with malice . . . .' [Citations.]" (*Id.* at pp. 871-872.)

"The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878] (*Bertero*).)

"[T]he elements of the tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel, supra,* 47 Cal.3d at p. 872.) The Supreme Court recognized that it did not wish to condone the improper filing of frivolous lawsuits, but applying for sanctions and adopting measures facilitating a speedy resolution of the initial lawsuit were preferable to expanding the opportunities to create more litigation by adding claims for malicious prosecution after the resolution of the first action. (*Id.* at p. 873.)

In his complaint, Robert based his claims for malicious prosecution on respondents' (1) requesting an order for a writ of sale, (2) moving for reconsideration, and (3) filing an appeal from the reconsideration order. The Supreme Court has clearly held that a malicious prosecution claim cannot be based on a frivolous appeal (*Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 794 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083] (*Coleman*)). We therefore limit our consideration to the request for an order for a writ of sale and moving for reconsideration as grounds for a malicious prosecution claim.

A. *Filing for a Writ of Sale*

Courts have concluded that subsidiary procedural actions or purely defensive actions cannot be the basis for malicious prosecution claims. "The reason the courts have held that a malicious prosecution action cannot be grounded upon actions taken within pending litigation is that permitting such a cause of action would disrupt the ongoing lawsuit by injecting tort claims against the parties' lawyers and because the appropriate remedy for actions taken within a lawsuit lies in the invocation of the court's broad powers to control judicial proceedings. [Citation.]" (*Adams* v. *Superior Court* (1992) 2 Cal.App.4th 521, 528 [3 Cal.Rptr.2d 49] (*Adams*).)

Courts have found the following actions to be ancillary or independent rather than subsidiary proceedings: institution of a special insanity proceeding (*Sutherland* v. *Palme* (1949) 93 Cal.App.2d 307 [208 P.2d 1035]);

adversarial administrative proceedings (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 581 [311 P.2d 494, 66 A.L.R.2d 739]); wrongful attachments of property (*White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 348-350 [66 Cal.Rptr. 697, 438 P.2d 345] (*White Lighting*)); cross-complaints (*Bertero, supra,* 13 Cal.3d at p. 51); filing a lis pendens (*Woodcourt II Limited* v. *McDonald Co.* (1981) 119 Cal.App.3d 245 [173 Cal.Rptr. 836]); judicial arbitrations (*Stanley* v. *Superior Court* (1982) 130 Cal.App.3d 460 [181 Cal.Rptr. 878]); petitions for administrative mandate (*Sierra Club* v. *Superior Court* (1985) 168 Cal.App.3d 1138 [214 Cal.Rptr. 740]); and will contests (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 691-694 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (*Crowley*)).

In contrast, courts have determined that the following proceedings cannot give rise to a malicious prosecution claim: requests for admissions (*Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 922 [134 Cal.Rptr. 145]); departmental investigations resulting in no formal proceedings (*Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48 [138 Cal.Rptr. 540]); small claims proceedings (*Pace* v. *Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476, 478-479 [161 Cal.Rptr. 662]); filing appeals (*Coleman, supra,* 41 Cal.3d at p. 794); applications for an order to show cause regarding contempt (*Lossing* v. *Superior Court* (1989) 207 Cal.App.3d 635 [255 Cal.Rptr. 18], but see *Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967 [227 Cal.Rptr. 718] [postjudgment order to show cause proceedings did give rise to a malicious prosecution action]); motions to disqualify an attorney (*Silver* v. *Gold* (1989) 211 Cal.App.3d 17 [259 Cal.Rptr. 185]); filing actions in a bankruptcy proceeding to prevent the discharge of a debt (*Idell* v. *Goodman* (1990) 224 Cal.App.3d 262, 272-273 [273 Cal.Rptr. 605]); applications to the Federal Communications Commission (*Stolz* v. *Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1819-1822 [31 Cal.Rptr.2d 229] (*Wong*)).

 We are unaware of any case that directly addresses the question of whether the filing for a writ of sale supports a subsequent claim for malicious prosecution. The above cases, however, indicate that courts have refused to permit malicious prosecution claims when they are based on a prior proceeding that is: (1) less formal or unlike the process in the superior court (i.e., a small claims hearing, an investigation or application not resulting in a formal proceeding), (2) purely defensive in nature, or (3) a continuation of an existing proceeding. It is the latter question that we must address here.

When determining whether the complained of action is a continuation of an existing proceeding, Robert contends that we should not focus on whether the prior proceeding is "technically" a separate and distinct action. Rather,

he claims, the focus should be on whether the prior proceeding infringed on the party's interest to be free from "unjustifiable and unreasonable litigation" (*Crowley, supra,* 8 Cal.4th at p. 692). In *Crowley,* the Supreme Court held that a will contest is an ancillary or independent action, despite its dependence for its existence on the filing of the petition to probate the will. Robert claims the reason for this holding was that the will contest had ". . . the effect of injecting new factual and legal issues into the . . . process, and of placing on the . . . proponent the burden of mounting a defense to those issues." (*Ibid.*)

Respondents contend that Robert inappropriately attempts to use the above language in dicta as a springboard to find a sufficient basis for his malicious prosecution action. The basis for the holding in *Crowley,* respondents assert, is that a will contest involves two separate and distinct proceedings pending before the court: " 'One is the petition for the probate of the will; the other is the contest of the probate of the will.' [Citation.]" (*Crowley, supra,* 8 Cal.4th at p. 692.) The filing of a will contest transforms the probate of a will "from a routine ex parte procedure . . . , into a sharply adversarial and hotly contested litigation, necessitating lengthy and expensive discovery and trial." (*Ibid.*)

We agree with respondents. The Supreme Court did not hold that merely injecting new facts and legal issues into a proceeding and imposing on the party the "burden of mounting a defense" (*Crowley, supra,* 8 Cal.4th at p. 692) would be sufficient to establish that a proceeding satisfies the requirement of being independent or ancillary. The court considered these factors in dicta, but critical to its holding were the facts that a will contest involves two distinct proceedings, and the contest, not the initial petition for the probate of the will, created the contentious litigation.

Unlike a will contest, a motion for a writ of sale occurs after liability and damages have been determined, and it does not result in a separate and distinct proceeding. ▪ " 'A motion is not an independent right or remedy . . . but implies the pendency of a suit between the parties and is confined to incidental matters in the progress of the cause. As the rule is sometimes expressed, a motion relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy.' [Citation.]" (*People* v. *Sparks* (1952) 112 Cal.App.2d 120, 121 [246 P.2d 64].) Respondents simply invoked one remedial measure, which could not exist absent the judgment. ▪ A " '[r]emedy' is not redress or relief, but is the means by which a wrong is redressed and relief obtained. ▪ A writ is an order in writing issued by a competent official in a judicial proceeding and, as applied to execution in civil cases, is part of

the remedy to effectuate the action by the enforcement of the judgment." (*Painter* v. *Berglund* (1939) 31 Cal.App.2d 63, 70 [87 P.2d 360].)

■ Further, the statutory remedy of applying for a writ of sale (Code Civ. Proc., § 712.010) provides an expeditious means to enforce a judgment and does not result in protracted litigation. The *Bertero* court explained that the "malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice." (*Bertero, supra,* 13 Cal.3d at p. 50.) Permitting a malicious prosecution claim in this situation would threaten the efficient administration of justice. It would permit a party to transform the statutory and summary procedure to enforce a judgment into a full-blown lawsuit. The efficient administration of justice in this situation is to permit the court to supervise the collection procedure; if the procedure is abused, the appropriate remedy is to request sanctions.

Courts have allowed malicious prosecution claims based on improper writs of attachment (*Campbell* v. *White* (1962) 199 Cal.App.2d 382, 384 [18 Cal.Rptr. 628]; *Harris* v. *Harter* (1926) 79 Cal.App. 190, 192 [249 P. 39]; *White Lighting, supra,* 68 Cal.2d at p. 347; *Merron* v. *Title Guarantee & Trust Co.* (1938) 27 Cal.App.2d 119, 120 [80 P.2d 740]), and Robert asserts there is no significant difference between attachments and writs of sale. Respondents point out that in each case cited by Robert an actual attachment, and not just an application, occurred; thus, the defendant's interest in the property was harmed. Here, respondents did not file a lis pendens and burden Robert's property; rather, they used the least oppressive procedure.

An additional distinction between attachments and writs of sale is the timing of the procedures. Robert asserts, with no discussion, that this difference is insignificant, but we disagree. The writ of attachment occurs when the complaint is filed; prior to any determination of liability. In contrast, a writ of sale occurs after liability has been determined and a judgment ordered. The court will not issue a writ of sale without proof of a valid, unsatisfied judgment (Code Civ. Proc., § 712.010), making this procedure the continuation, or the enforcement, of the prior action, and not a separate proceeding.

Finally, Robert argues that in each of the following cases, *Bertero, supra,* 13 Cal.3d at page 50, *Wong, supra,* 25 Cal.App.4th at pages 1819-1821, *Chauncey* v. *Niems, supra,* 182 Cal.App.3d at pages 973-976, *Idell* v. *Goodman, supra,* 224 Cal.App.3d at pp. 271-273; *Camarena* v. *Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1094-1095 [235 Cal.Rptr. 820], and *Twyford* v. *Twyford, supra,* 63 Cal.App.3d at pages 922-923, the courts undertook an

analysis of the "prior action" requirement by examining: (1) the adversarial nature of the proceeding, (2) whether the defendants sought affirmative relief or undertook purely defensive measures, and (3) the resources expended by the plaintiffs in dealing with the proceeding. This action, Robert maintains, satisfied these criteria: The writ of sale action was an adversarial proceeding and it added new issues such as ownership of the restaurant where the underlying accident occurred and ownership of other restaurants, the status of the marriage, and Allen's standing to bring the motion. Additionally, Robert stresses that this litigation infringed on his freedom from unjustifiable litigation and his emotional well-being.

Contrary to Robert's assertion, none of the cases he cites relied exclusively on the above three factors. Almost all proceedings are adversarial and inject new facts and theories; moreover, any improper formal proceeding will require the defendant to incur additional costs and will infringe on the defendant's freedom from unjustifiable litigation. Thus, for example, the above factors are involved in a motion to disqualify counsel, but because such a motion is not independent of the original lawsuit, it cannot be the basis for a malicious prosecution claim (see *Silver* v. *Gold, supra,* 211 Cal.App.3d 17). Further, courts have disallowed malicious prosecution claims because the underlying lawsuit was purely defensive (see, e.g., *Idell* v. *Goodman, supra,* 224 Cal.App.3d at pp. 272-273), but no court has suggested that any action not defensive in nature will always give rise to a malicious prosecution claim.

Since all improper proceedings create unjustifiable litigation and tax one's emotional well-being, the question is the degree to which they burden the "innocent" party. A motion to execute a sale provides a relatively inexpensive and expeditious means to enforce a judgment. Defending against an improper application entails some hardship, especially when the motion is followed by a motion for reconsideration and an appeal, but the hardship does not approach that suffered by litigants in a will contest or a full-blown lawsuit. Moving for sanctions is the best and most efficient method for thwarting and punishing improper requests for postjudgment remedies.

Moving for a writ of sale is analogous to taking an appeal, and the Supreme Court has held that taking an appeal cannot support malicious prosecution liability (*Coleman, supra,* 41 Cal.3d 782). Both proceedings are adversarial and require the parties to incur additional costs, but neither is an *independent* proceeding. "We do not believe that the presence of factors implicitly rejected in *Coleman* allows us to reach an opposite result. [Citation.]" (*Idell* v. *Goodman, supra,* 224 Cal.App.3d at p. 276.) We therefore reject Robert's claim that the application for a writ of sale gives rise to a claim for malicious prosecution.

## B. *Motion for Reconsideration*

▮ Robert contends that respondents' motion for reconsideration also supports a malicious prosecution action. Respondents dispute this and cite *Adams, supra,* 2 Cal.App.4th at page 528, which holds that a reconsideration motion cannot be grounds for a malicious prosecution claim.

*Adams,* Robert argues, is distinguishable from the facts here. In *Adams,* the attorneys representing the plaintiff in a civil lawsuit attempted to intervene in a criminal case involving the same defendant in the civil lawsuit. In the criminal case, the attorneys filed a motion to have the court reconsider its order reducing the defendant's felony conviction to a misdemeanor. The defendant in the criminal action subsequently sued for malicious prosecution based on this motion for reconsideration. The court held that filing a motion for reconsideration was a subsidiary procedural action within a lawsuit and it concluded that permitting a malicious prosecution action in such a situation would be disruptive to pending litigation. (*Adams, supra,* 2 Cal.App.4th at p. 528.) Here, Robert argues, the malicious prosecution claim would not interfere with any lawsuit since judgment had been entered against Claudette and she had filed in bankruptcy court.

Robert's argument is unpersuasive. The *Adams* court also emphasized that a reason for characterizing reconsideration motions as subsidiary actions is that the court has "broad inherent powers sufficient to control any problems generated by petitioners' making of the motions for reconsideration." (*Adams, supra,* 2 Cal.App.4th at p. 528.) This consideration applies equally to the facts of this case. The court had the power to deny respondents' reconsideration motion on its merits and to award any requested and appropriate sanctions. Further, a motion for reconsideration, no matter what the facts of the case, has absolutely no meaning apart from the original motion; it therefore has no separate existence and is not an independent proceeding (see also *Coleman, supra,* 41 Cal.3d 782 [taking an appeal is not an independent proceeding]). We hold a motion for reconsideration can never give rise to a malicious prosecution claim.

### III. *Abuse of Process*

▮ Robert contends that the application for a writ of sale and the subsequent motion for reconsideration supported an abuse of process claim. ▮ "To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful manner. [Citations.]" (*Coleman, supra,* 41 Cal.3d at p. 792.)

 Respondents contend that the complained of action was absolutely privileged under Civil Code section 47, subdivision (b).[2] This statute provides in pertinent part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . judicial proceeding . . . ."

 The litigation privilege applies when statements are "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) [they have] some connection or logical relation to the action." (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) The privilege "extends to any communication: '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citations.]" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 209 [271 Cal.Rptr. 191, 793 P.2d 524] (*Kimmel*).)

 Robert maintains that respondents acted improperly by attempting to acquire his property and the litigation privilege is inapplicable because the alleged injury resulted from noncommunicative conduct. (See, e.g., *Kimmel, supra,* 51 Cal.3d at p. 212; *Mero* v. *Sadoff* (1995) 31 Cal.App.4th 1466, 1479-1480 [37 Cal.Rptr.2d 769] (*Mero*).) Attempting to split the family home, Robert argues, was a noncommunicative act.

The cases upon which Robert relies, *Kimmel* and *Mero*, actually provide support for respondents' contention that the conduct is privileged. In both *Kimmel* and *Mero* the conduct supporting an abuse of process claim occurred completely outside the judicial proceedings. In *Kimmel,* the plaintiff suffered injury from the taping of a confidential telephone conversation, not from the publication or broadcast of the information in the conversations. (*Kimmel, supra,* 51 Cal.3d at p. 209.) To the extent any injury related to the testimony regarding the content of the taped conversation, the court concluded that it was privileged. (*Id.* at p. 210.) Thus, the nonprivileged action was the invasion of privacy outside and apart from the litigation procedure. Similarly, in *Mero,* the nonprivileged action was completely separate from the judicial proceedings and involved the injury resulting from a physical examination by a physician. (31 Cal.App.4th 1466.)

Here, the complained about conduct involved the filing of the motion for a writ of sale and the motion for reconsideration. Such actions are clearly

---

[2]Respondents also argue that the complaint does not allege sufficient facts to constitute a cause of action for abuse of process. Since we conclude that the complained of action is covered by the litigation privilege, we do not address this asserted defect, which probably could be remedied by amending the complaint.

permitted by law in the course of a judicial proceeding. Further, Robert cannot amend his complaint to allege any injury outside the judicial process; respondents never interfered with Robert's property interest and he never suffered any injury from wrongful conduct outside the judicial proceedings.

## DISPOSITION

We affirm the judgment and Merlet is to pay costs on appeal.

Kline, P. J., and Haerle, J., concurred.